UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ALFRED WHITE,

Defendant.

96-cr-1123 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Defendant Alfred White moves for a sentence reduction pursuant to the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A). White was sentenced in 1998 to a term of life imprisonment plus 25 years for his role as a coconspirator in the robbery and murder of a postal worker. White, who has been incarcerated for the past 25 years, now requests that this Court reduce his sentence to time served. Considering White's role in the crime, record of rehabilitation, length of time served, and service to others over the quarter-century he has spent in prison, the Court finds that both "extraordinary and compelling reasons" support a sentence reduction and that a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the policy statements of the U.S. Sentencing Commission. Accordingly, White's motion is granted.

## BACKGROUND

In 1996, Alfred White—30 years old at the time—was indicted, along with several others, for his role in the robbery and murder of a U.S. Postal Service employee. (ECF No. 1.)

After trial a jury convicted White of murder, robbery, conspiracy, and using a firearm in connection with a crime of violence. In 1998 this Court sentenced White to life imprisonment plus 25 years, without the possibility of parole. (ECF No. 60.)

White is now 56 years old and has spent nearly half his life in federal prison for these offenses. The crimes he committed 29 years ago were unquestionably serious and warranted the harsh sentence imposed. But, as described below, White has by all accounts rehabilitated himself into a humane and compassionate man, and the "difference between [his] two halves could not be more pronounced." *United States v. Underwood,* No. 88-Cr-822 (SHS), 2021 U.S. Dist. LEXIS 8378, at *4 (S.D.N.Y. Jan. 15, 2021). He has maintained a completely flawless disciplinary record while incarcerated

1

and has served as a guide to young inmates and as a suicide companion to the mentally ill. And because he is serving a life sentence, he has made these efforts with no realistic hope of release.

In 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The act's "compassionate release" provision, codified at 18 U.S.C. § 3582(c), permits a defendant to petition for a sentence reduction if he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

18 U.S.C. § 3582(c)(1)(A) creates a "limited exception[]" to the general rule that "a district court may not modify an already-imposed sentence of imprisonment." *United States v. Torres*, 464 F. Supp. 3d 651, 654 (S.D.N.Y. 2020). To merit compassionate release, a defendant must make three showings: first, that "extraordinary and compelling reasons" support a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i); second, that a reduction is consistent with "the factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A); and third, that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

White argues that he has undergone "genuine and total personal rehabilitation." (ECF No. 123 at 31.) He contends that this transformation, when considered in concert with his perfect disciplinary record and exemplary service to others, merits compassionate release.

### A. Exhaustion of Administrative Remedies

In April 2020, White submitted a request for compassionate release to the warden of FCI Fairton; that request was subsequently denied. White has thus satisfied the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A).[1]

---

[1] The Government argues that the Court should not reach whether COVID-19 is an extraordinary and compelling reason for a sentence reduction because White did not specifically raise COVID-19 or his health conditions in his request to the warden and therefore did not fully exhaust those arguments. (ECF No. 126 at 10 n.2.) Because the Court finds that White has presented extraordinary and compelling reasons for a sentence reduction separate and apart from any consideration of his health status or the COVID-19 pandemic, it need not address whether "issue exhaustion" is required before a district court can consider a compassionate release motion.

## B. White Has Demonstrated Extraordinary and Compelling Reasons Supporting a Sentence Reduction

In *United States v. Brooker*, the U.S. Court of Appeals for the Second Circuit recognized that the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." 976 F.3d 228, 237 (2d Cir. 2020). After presiding over White's trial and thoroughly reviewing the record on this motion, the Court finds that White has demonstrated several "extraordinary and compelling reasons" warranting a sentence reduction.

### 1. *White's rehabilitation*

First, the Court is persuaded that during his quarter-century of incarceration White has rehabilitated himself. Literally dozens of detailed and specific letters from prison chaplains, mental health officials, other inmates, and family members attest to the profound moral change he has undergone during his time in prison. White takes full responsibility for the crimes of his past and has demonstrated genuine repentance.

A former member of White's housing unit writes that White "has on many occasions expressed his remorse for his actions" and "continues to strive each day to make amends for his actions." (ECF No. 105, Millan Letter, Ex. 19T1.) Another inmate describes White as "a man of god who has made that fundamental change in his life." (ECF No. 105, Torres Letter, Ex. 19T.)

Numerous letters from chaplains further attest to White's honorable character and exemplary work ethic. Chaplain J. Woods, who served as White's chaplain at USP McCreary from 2009-2016, writes:

It is with absolute confidence and of great respect that I submit this letter of reference and recommendation for Mr. Alfred White. … Alfred utilized his many outstanding/strong character qualities and abilities for the betterment of others and for our institution. … Alfred is truly an example of a changed man for the better. I believe he would be a great asset to society if given the opportunity, just as he has been throughout his incarceration.

ECF No. 105, Woods Letter, Ex. 3.

Another chaplain writes, "[H]e is a completely changed and wonderful man of God, a great minister, and a boundless mentor. … I believe that he is completely ready to return to our normal community." (ECF No. 105, Cho Letter, Ex. 4.)

Multiple members of the prison staff also attest to White's dependability and work ethic. A material handler supervisor writes that "Mr. White works very well

3

with all the newly appointed orderlies and has great pride in his work and has an exemplary work ethic." (ECF No. 105, Bell Letter, Ex. 8C.) Another supervisor writes that White was "one of two inmate workers on our crew that had written approval to assist the staff with unloading the weekly delivery truck, which had visual access to the outer perimeter fencing when our back doors were unlocked. It speaks volumes about his character to have been given that special approval." (ECF No. 105, Waldman Letter, Ex. 8D.)

Significantly, White's own letter evinces remorse and acceptance of responsibility. White does not make excuses for his actions and writes that "a man lost his life senselessly, and [White] will forever remain remorseful and ashamed" of his involvement. (ECF No. 105 at 68.) He writes that he cannot "fully express the shame and sorrow [he] deal[s] with every day." *Id.* at 69.

As further evidence of White's reformation, his disciplinary record over his 25 years in prison has remained entirely unblemished. He has now spent well over two decades in prison and has received *zero* disciplinary infractions during that time, an extraordinary accomplishment. *See Underwood,* 2021 U.S. Dist. LEXIS 8378, at *8.

The Government argues that White has failed to establish rehabilitation as one of the bases for a sentence reduction because the many letters he submitted came only from religious leaders, staff, inmates, family, and friends, and not from prison officials. This argument is unavailing. While letters from wardens and other prison officials are certainly helpful, the submissions of the chaplains, mental health officials, staff, and other inmates—all of whom have had the opportunity to observe and interact with White on a day-to-day basis over the course of many years—more than sufficiently demonstrate White's rehabilitation. Simply put, there is nothing in the voluminous record presented here that should cast doubt on White's thorough rehabilitation.

### 2. *White's service to others*

White has not presented rehabilitation alone as the basis for compassionate release. He has shown that he has spent his time in prison serving his community and has focused on the rehabilitation of other inmates as well as on his personal growth. Service to others is an appropriate consideration when determining whether a sentence reduction is warranted. *See, e.g., United States v. Millan,* 2020 U.S. Dist. LEXIS 59955, at *22 (S.D.N.Y. Apr. 6, 2020); and *Torres,* 464 F. Supp. 3d at 661-63.

White has been certified as a "Suicide Watch Companion" and has actively participated in the prison's suicide-prevention program. (ECF No 105, Ex. 8A.) He has served in this voluntary role at each facility in which he has been housed. (ECF No. 105, Ex. 8B.) In this capacity he has worked closely with institutional mental health

4

professionals to assist suicidal prisoners; has averaged between 20-30 hours of actual oversight each month; and has lived for periods of time with mentally ill peers to help them adjust to prison. (ECF No. 105, Ex. 8A.) He attends regular trainings so that he can continue to develop skills in this area.

Michael Johnson, an inmate at Fairton who suffers from mental health issues himself, writes of White:

[M]any times over the years, [White] was able to talk me out of wanting to kill myself. He has never once changed his attitude, nor has he ever judged me for the mental illness. He actually wants to help me so I do not wind up being another statistic. … [W]ithout the help of Alfred I would not be able to pick up my head in the morning and keep going. … I believe Alfred to be that person that learned from his mistakes and now he spends his time trying to help others.

ECF No. 123, Johnson Letter, Ex. C.

White has also made himself available to other inmates as a mentor and role model beyond the confines of his role as a Suicide Watch Companion. Numerous letters of support from inmates speak to White's character and influence within Fairton. *See, e.g.*, ECF No. 105, Ex. 19N, 19O, and 19R.

### 3. *Length of White's incarceration*

The average federal sentence for murder in 2021 was 20.3 years. United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last updated December 8, 2022). Including good time, White's period of incarceration is nearly 50 percent greater than the average federal sentence for murder last year. Nor does White seek to understate his involvement in the crimes that led to his conviction. White indeed helped plan the robbery that culminated in the death of Guillermo Gonzalez, an innocent postal employee. But White did not act alone and did not pull the trigger that killed Gonzalez. On the night of the robbery, Alfredo Gallego, George Gallego, Steven Martinez, and Giovanni Rosado assembled to discuss their plans and prepare for the robbery. (Presentence Investigation Report ("PSR") at 11.) All four then drove to the post office in Parkchester, New York. *Id*. at 12. They ultimately left the post office in different vehicles. *Id*. White arrived separately in his own vehicle. His role that night was to drive slowly behind George Gallego's car, which was behind Gonzalez's truck, in an attempt to stall traffic. *Id*. Alfredo Gallego approached Gonzalez and shot and killed him with George's handgun, for which George had built silencers. *Id*. The Gallegos, Martinez, and Rosado then drove to New Jersey, intending to take the proceeds of the robbery and abandon the postal truck. White did not follow the group to New Jersey.

The person who actually pulled the trigger that killed Gonzalez, Alfredo Gallego, is currently serving a life sentence in federal prison. The Court feels that the lengths of Gallego's and White's sentences should appropriately reflect their respective roles in Gonzalez's murder. Granting White compassionate release and capping his sentence at the equivalent of 28 years, with good time credit, achieves that end. The length of this sentence appropriately reflects the seriousness of White's crimes and represents a just punishment, while recognizing the degree of his serious involvement in the murder of Gonzalez.

Although it is true that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction, 28 U.S.C. § 994(t), White's exemplary disciplinary record, work ethic, and meaningful mentorship of others in prison over 25 years demonstrates that he "has used his . . . years in prison not just to better himself but also to better his community." *United States v. Rodriguez,* 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). His behavior thus "exceed[s] the bounds of what we consider 'rehabilitation.'" *Torres,* 464 F. Supp. 3d at 663.

And, although rehabilitation alone does not justify a sentence reduction, the Second Circuit clarified in *Brooker* that evidence of rehabilitation may contribute to a showing of extraordinary and compelling circumstances. *Brooker,* 976 F.3d at 238. In this case, White's manifest rehabilitation and personal growth interact with his service to others during his long incarceration. Regardless of whether any of these factors alone would meet the threshold of extraordinary and compelling reasons, "[h]ere, the totality of the circumstances" combine to make such a showing. *United States v. Phillips,* 469 F. Supp. 3d 180, 184 (S.D.N.Y. 2020).

In sum, the Court finds that, under the totality of the circumstances, White merits compassionate release. His thorough and genuine rehabilitation, flawless disciplinary record, and service to others within the prison community satisfy the compassionate release statute's exacting requirements.

## C. A Sentence Reduction Is Consistent with the Section 3553(a) Factors

After finding that "extraordinary and compelling reasons" support a sentence reduction, the Court must consider whether any such reduction is consistent with the factors set forth in 18 U.S.C. 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Section 3553(a) sets forth factors a court shall consider in "impos[ing] a sentence sufficient, but not greater than necessary, to comply with" the goals of the criminal justice system. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); considerations of punishment, deterrence, and incapacitation, *id.* § 3553(a)(2); and the "need to avoid

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6).

The Court finds that the section 3553(a) factors weigh in favor of a sentence reduction in this case. There is no minimizing the severity of White's crimes, which were of the utmost seriousness. However, the "history and characteristics" of the defendant "did not freeze on the day of his arrest and incapacitation." *Underwood,* 2021 U.S. Dist. LEXIS 8378, at *18. Indeed, the U.S. Supreme Court has made clear that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider," including, "plainly[,] 'the history and characteristics of the defendant.'" *Pepper v. United States,* 562 U.S. 476, 491 (2011). As noted above, the Court finds that White has been fully rehabilitated. Accordingly, the Court believes that a sentence of almost half his life has been sufficient to meet the goals of specific deterrence, just punishment, and incapacitation.

## D. A Sentence Reduction Is Consistent with the Applicable Policy Statements of the Sentencing Commission

Finally, the Court must consider whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant U.S. Sentencing Commission policy statement requires the Court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" in order to grant release. U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018); *see also* 18 U.S.C. § 3142(g).

The Court is confident that White does not pose a danger to the safety of any other person or to the community. At age 56, the likelihood of his recidivating is low, as "age exert[s] a strong influence on recidivism" and "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders,* https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders (last updated December 8, 2022). And it is worth noting that after his arrest for this crime—his first-ever arrest—White was released on bail and complied with all of the conditions of his release during the months preceding trial. When released, he plans to move to the Bronx to live with his father and stepmother, where he has a job in maintenance work waiting. (ECF No. 106, Ex. 16.) Similarly, his brother-in-law has indicated that White is welcome to work and live with him in Florida. (ECF No. 106, Ex. 15.) He will also have the support of his adult daughter, Melanie White. (ECF No. 106, Ex. 14A.) White clearly has a core of supportive family

members ready to provide him with a place to live and help him adjust to life outside prison.

In light of White's rehabilitation, his service to others during the decades of his incarceration, and the familial support he will enjoy upon release, the Court feels confident in its determination to grant this motion. The Court finds White fit to rejoin his family and contribute to society, in much the same way he has during his years in prison.

## CONCLUSION

White's motion for compassionate release is granted. His crimes were undeniably and undoubtedly serious, but he committed them over 29 years ago. White is now 56 years old. While facing the reality of being sentenced to life imprisonment without parole, White has used this time to rehabilitate himself and evolve into a humane and law-abiding adult. He has been a model inmate, maintaining consistent employment in prison and a clean disciplinary record. He has contributed significantly to the prison community, as demonstrated by the voluminous letters from fellow inmates, chaplains, and prison staff.

In addition, the section 3553(a) factors weigh in favor of release. White's rehabilitation convinces the Court that his time in prison is "sufficient, but not greater than necessary" to meet the ends of the criminal justice system. Finally, the Court finds that a reduction is consistent with the Sentencing Commission's applicable policy statement, as White poses no danger to any other person or the community. The Court is optimistic that upon release White will have as positive an impact on his community as he has had on his fellow inmates over the past quarter-century.

For these reasons, the Court reduces White's sentence to time served. It is further ordered that:

1. Upon release from custody, White shall be placed on supervised release for a term of five years with the following mandatory conditions: (a) he shall not commit another federal, state, or local crime; (b) he shall not illegally possess a controlled substance; (c) he shall not possess a firearm, dangerous weapon, or destructive device; (d) he shall refrain from any unlawful use of a controlled substance; and (e) he shall submit his person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer and, if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by White. Failure

to submit to a search may be grounds for revocation of release. He shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner. In addition, he shall comply with standard conditions of supervision (1) through (12).

2. This order shall be stayed for ten days in order for the United States Probation Office and Bureau of Prisons to develop a reentry plan to facilitate White's release from custody.

Dated: New York, New York
       December 8, 2022

SO ORDERED:

Sidney H. Stein, U.S.D.J.